Daisy Bleuler. Are we ready to proceed? You're Ms. Rao. You may proceed. May it please the Court, Sangeeta Rao on behalf of the United States. This is a government appeal from the district court's erroneous pretrial dismissal of one FCPA conspiracy count and two charges under the money-laundering statute. I'm going to focus my discussion on FCPA conspiracy and then answer any questions the court has about the two money-laundering charges. On FCPA conspiracy, the indictment validly pleaded liability against defendant, a foreign national operating abroad, on two distinct theories. It charged her with FCPA conspiracy as both an enumerated person in the FCPA statute, an agent of a domestic concern, and also as a non-enumerated FCPA actor. In other words, even if she does not fall within the categories of persons who are reliable as FCPA principals. The district court erred in dismissing both theories and the government is entitled to proceed on both theories. I'm first going to address extraterritoriality issues that apply to both theories, because that is what the defendant focused on, and then I'm going to address the Gabbardi presumption, which applies only to the non-agent theory on extraterritoriality. This court need not decide whether an FCPA conspiracy offense applies extraterritorially. Under the Supreme Court's two-step framework set forth in RJR Nabisco, this case involves a domestic application of an FCPA conspiracy offense, so it can be resolved on that basis alone, a step two analysis without determining whether the statute gives a clear indication of extraterritoriality, which is a step one analysis. Under a step two analysis, if the conduct relevant to the statute's focus occurred in the United States, then the case involves the permissible domestic application, even if other conduct occurred abroad. A statute's focus is the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate. Now for a conspiracy offense, the focus is the agreement and the overt acts, which are themselves a manifestation of the agreement, and it's also relevant to look at the object of the conspiracy, which is the FCPA, and then the focus of that FCPA, and if you do that, it's clear that a domestic offense is involved, because numerous overt acts that are the focus of an FCPA conspiracy offense happened in the United States. The bribery scheme was carried out by U.S. persons for the benefit of U.S. businesses in Texas and Florida. Bank accounts, U.S. bank accounts, were used to make the bribe payments. The conspirators used the U.S. wires to communicate with each other. The defendant herself used wires to communicate with her U.S.-based co-conspirators. Even one of the bribe recipients and facilitators, let alone the bribe payers, was a U.S. citizen. That's de Leon. And even the purchasing arm of the Venezuelan energy company that was one of the entities used to confer improper advantages to the U.S. bribe payers was itself actually a U.S. business based in Texas. This is all laid out in the government's opening brief in our facts section, but also the reply brief pages two to three with record sites. That kind of offense with a deep connection to the United States is a core FCPA offense. As this court said in Castle and Kay, Congress enacted the FCPA in the wake of investigations showing a widespread practice among U.S. companies of bribing foreign officials. Congress was concerned that this kind of bribery harmed U.S. interests by affecting competition among U.S. businesses, harming the reputation of U.S. companies, and harming U.S. foreign policy by undermining confidence in the United States. Is there some language in Castle that seems to limit the statute to U.S. entities and citizens? Well, there are different provisions that talk about U.S. persons, but not just U.S. persons and entities. If you look at the text of the FCPA, what it shows is a threshold connection to the United States. All the different provisions require a threshold. Congress was not interested in criminalizing all foreign bribery, but once you have that threshold connection, then the conspiracy liability would come in under domestic application to criminalize everyone who is aiding that domestic violation. That argument is really relevant for the case, and they are separate. The presumption against extraterritoriality preserves Congress's interest in making sure that, or the Court's interest in making sure that a domestic statute is applied domestically and that there's a sufficient U.S. connection. Gabbardi is separate. You don't, a Court doesn't need to import extraterritoriality concerns into Gabbardi because the presumption against extraterritoriality already does it. They really should be separate analyses. The fact that the domestic offense conduct that I just discussed actually satisfies all the elements for a substantive FCPA violation shows that the conspiracy offense is also a domestic offense. There are two recent cases that show that, Hussain and Elbaz, where the Fourth Circuit and the Ninth Circuit case, said that a domestic wire fraud conspiracy was satisfied by the same conduct that demonstrated a domestic application of the wire fraud statute. Same here. All the elements for a domestic FCPA substantive offense were satisfied in the United States, and so that makes it a domestic application of the statute, and once it's a domestic application, you can then get everybody who was involved, including people operating only in a foreign country. That's what happened in Hussain and Elbaz. They were operating only in a foreign country, but they had conspirators and other ways in which they implicated the United States. Elbaz and Hussain are really just part of a long and well-established tradition that hold foreign nationals liable for their conduct of co-conspirators in the United States, for assisting that conduct, and we cited Ford from the Supreme Court for that proposition, and this Court's decision in Rivard, and what's interesting about Rivard is that that was actually cited in the legislative history of the FCPA, so we know that Congress was aware of Rivard, and Rivard in turn discusses Ford and these principles that I've been talking about. So once you get past the extraterritorial analysis, and you don't need to go to step one, you can just rely on step two, you turn to Gabbardi. The government is not required to allege that Raffoi satisfied the requirements for a substantive 78DD2 violation, because the indictment validly pleads that she's guilty of FCPA conspiracy under a non-agent theory. Raffoi does not fall within the narrow exception under Gabbardi to the general application of secondary liability. That presumption that conspiracy liability applies across the criminal code is powerful, and it's factual, because section 371 says that it applies to any offense, so it takes a lot to overcome that presumption that is text-based. Before Gabbardi can even arguably apply, the statutory text must demonstrate that a participant necessarily, or at least typically, involved in the criminal transaction is exempt from criminal liability, substantive liability, because those are the limited circumstances in which, under Gabbardi, it might warrant that extraordinary inference that Congress, by admitting that type of individual, actually intended to undercut conspiracy liability. You can tell that they were thinking about it, because that person is so central, is so necessary, but a defendant like Raffoi, for purposes of this argument, a foreign national but a non-agent, is not a necessary participant to the FCPA offense. There's no reason Congress would have been thinking about that type of person. You can't get that from the text, and that's why the Gabbardi presumption does not apply. The Second Circuit in Hoskins gave Gabbardi too broad a construction. It didn't warrant to the text, which, if you look at the text, you see that you just need a threshold U.S. connection, which is provided by the principal liability. You couldn't have a non-agent mentioned in DD2, because the non-agent doesn't have a U.S. connection, but once you have someone with a U.S. connection, then secondary liability comes in, like it does across the criminal code, to bring in all the people who are assisting the principals. To apply Gabbardi based on generalized policy concerns, like the Second Circuit did, just cuts too deeply into secondary liability. But this is important. Even if Gabbardi applies, it applies narrowly. Meaning, even if it is a domestic liability for an extraterritorial offense, for a non-agent foreign national, there's no reason for it to exclude liability when there's a domestic application of the offense. We know that Gabbardi is a limited and weak presumption. This Court said that in Filetta, and the Supreme Court said it in Pinkerton. Ms. Rao, the District Court concluded it lacked subject matter jurisdiction. If we disagree with that jurisdictional ruling on the agency theory, do we even have to reach whether there can be conspiracy liability for a non-agent conspirator? Yes, this Court should reach both theories, because the government is entitled to go forward on both theories. That is, in fact, what the Second Circuit held, and that's the part of Hoskins, and in Hoskins 2, we see that the government doesn't always win on the agent theory. So we need to be able to go forward on the full liability that Congress allowed us, and we believe that that's both the agent theory and the non-agent theory. The District Court precluded us from going forward on both. We're appealing both, so the Court should decide that. Even if we part company with the District Court's jurisdictional ruling, we should go further than that and also wade into whether there can be conspiracy liability for a non-agent conspirator. Well, Your Honor, the reason is because the District Court did more than just dismiss the agent theory. The District Court dismissed both theories, and the District Court relied on Gabbardi and alluded to the presumption against extraterritoriality in a footnote. So these are all things that we think the District Court decided, and if this Court only said that the District Court erred on the subject matter jurisdiction theory, the District Court would say, well, there's all these other reasons I dismissed, and we have appealed them both. We think they're ripe for decision by this Court. Turning to the agent theory, the District Court seemed to primarily—well, for one thing, the District Court dismissed it because it believed that the agent needed to be in the United States, and that is simply not textual, and the defendant doesn't even seem to really defend that. The District Court also erred in holding that the indictment did not sufficiently allege that Raffoi acted as an agent because it didn't allege that she acted under the control of a domestic concern. So the FCPA does not define agent, and thus common law principles apply. The defendant and the government both agree on that. To determine whether an agency relationship exists, this Court in Christiana Trust said common law requires principles control over the agents acting on the principal's behalf. Justice Sotomayor. Counsel, do you have a . . . Christiana Trust, I believe, is a civil case, not that it isn't helpful in this instance, but have you got a criminal case, a Fifth Circuit criminal case or a Supreme Court case, that would tend to controvert the District Courts? I believe the District Court asserted in this case or found that the government must prove agency through undisputed evidence. Is there a Fifth Circuit or Supreme Court criminal case that would persuade us that that is incorrect? Well, I think just basic cases from the Supreme Court and this Court about what an indictment is and Rule 7C1 undermine that. So in the general sense, pleading a criminal case through an indictment in the general sense? Yes, and we cited those in our briefs. So I don't have a specific agency case, except that we did cite cases that said that the government does not need to prove evidentiary or plead evidentiary detail. That was a . . . and then there was a specific case, I think, from the Sixth Circuit that said you don't need to plead the details of agency. So I think if you put all those things together, that proves our point. But even if you needed to have some allegations about controls, if you needed . . . if it was some kind of core criminality aspect to it, there are a lot of details in the indictment. There are 75 pages that discuss what Refoy did. And it even includes allegations that she acted at the principal's direction. And we gave a number of citations to that at page 40 of our opening brief. And I'll just mention some of them. At ROA 24, the indictment alleges that Rincon and some companies to others in order to conceal the bribes. And at ROA 54-55, de Leon provided handwritten instructions to Refoy, directing Refoy to transfer funds between accounts. That's paragraph 168. There are a number of others. That shows control. Your Honors, I'd be happy to address the money laundering charges if the Court has questions. We think that that is patently obvious from the brief that the money laundering charges are valid. So I will reserve the rest of my time for rebuttal unless the Court has questions. Good morning. May I please the Court, Laura Ferguson, for appellee Daisy Refoy. The government's prosecution of Swiss financial advisor Daisy Refoy is an unwarranted overreach of U.S. criminal jurisdiction, and the District Court rightly dismissed the indictment. I want to make clear that we are not arguing that this case presented a question of the Court's subject matter jurisdiction, and we're not arguing that agency had to be established through undisputed facts. So I want to make that clear from the outset. There's aspects of the District Court's decision that we also disagree with. Before I turn to my main argument, I would like to make a few preliminary points. First, the indictment does not allege that Ms. Refoy engaged in any conduct in the U.S. But more importantly, Ms. Refoy also is not engaged to have purposefully directed any criminal conduct at the United States. Unlike the foreign defendants in the cases at the government sites, where the defendant participated in smuggling drugs or contraband into the U.S., or was trying to sell child pornography into the U.S. market, or was making use of U.S. wires to intentionally defraud U.S. victims, this case doesn't have that sort of purposeful direction at the U.S. element that might justify the exercise of extraterritorial jurisdiction over a non-U.S. defendant who did not set foot in the U.S. The indictment instead alleges that Ms. Refoy, a Swiss citizen, assisted four Venezuelans, De Leon, Villalobos, Rincon, and Alvarado, open accounts at a banking institution in Switzerland. Ms. Refoy is not alleged to have any signatory authority or control over the Swiss bank accounts. She's not alleged to have authorized the wire of any funds. The Swiss bank account itself would have had to engage in substantial due diligence to open the accounts, and Ms. Refoy is not alleged to have violated any Swiss laws. Under the government's approach to U.S. jurisdiction, any foreign banking institution, financial services advisor, or wealth management firm, even though they own domestic law, is at risk of U.S. criminal liability when providing basic financial services to account holders who ultimately use funds in the account to violate U.S. laws, and U.S. jurisdiction simply does not reach that far. The government's position that it can extend U.S. criminal jurisdiction over Ms. Refoy cannot be squared with a series of cases beginning in 2010, Morrison, Argyro Nabisco, Kyoble, and others, in which the Supreme Court says that U.S. statutes have domestic application only, absent a clear indication that they are to apply extraterritorially. And here, as to the count to conspiracy charge against Ms. Refoy, the government does not argue that that statute demonstrates a congressional intent that it apply extraterritorially. It doesn't contain any language that would suggest that it's not part of a larger statutory scheme that connotes congressional intent to apply extraterritorially. And therefore, as the government agrees, it would need to have domestic application here. And we agree with the government that the test for whether there's a domestic application looks to whether the conduct that is relevant to the statute's focus, the area of solicitude, the area of congressional concern, whether that conduct occurred overseas or occurred in the U.S. And we also agree with the government that for conspiracy, the focus is the agreement, principally the agreement, that the conspiracy laws to prohibit people from forming agreements to violate the law. And also, we would, you know, agree significant overt acts could be relevant. Here, what's significant is the count to does not allege that Ms. Refoy engaged in an agreement in the United States. This is a conspiracy charge against her. She did not form an agreement in the United States. There is a single allegation in count to about a meeting to discuss the scheme. That's paragraph 171. But notably, Ms. Refoy, and this meeting happens in Florida, and the government points to this, but this is not a meeting that Ms. Refoy attends. So she did not form an agreement in the U.S. The best the government can do in its reply brief is says that the indictment fairly alleges a meeting of the minds that occurred in part in the U.S. because the reasonably foreseeable overt acts are a manifestation of the agreement. But that's just conflating the agreement element with the overt act agreement, and it's sort of, you know, doublespeak. But even if you do focus on the overt acts, the focus there also is on extraterritorial conduct. So the government, with respect to Ms. Refoy, can only point to three emails that she exchanged with this individual, Shira, but they notably do not argue or allege in their indictment that these emails used U.S. wires. And in fact, Mr. Shira is a Venezuelan national. He has a company, Shira Company 5, which transferred many of the wires at issue here, and that company is not alleged to be in the U.S. So given how significant it is that domestic conduct be alleged, the indictment is entirely silent on any connection of Ms. Refoy to U.S. conduct. Even these emails don't allege use of U.S. wires. The government then says, well, we should look to not just Ms. Refoy's conduct, but the conduct of her co-conspirators. And yet, when you scrutinize the overt acts listed in count two, those also aren't domestic acts. Most of them involve wires between various Swiss accounts. Several involve wires between Shira Company 5 to Swiss account one. Those are numerous paragraphs in count two of the overt acts section go to those wires. But interestingly, Shira Company 5, unlike Shira Companies 1, 2, and 3, is not alleged to be U.S. based. So we can't infer from that that that is domestic conduct. It's overseas conduct. Similarly, the overt acts section alleges a transfer from Rincon Company 3 to a Swiss account, and that company also is not alleged to be a U.S. based company, unlike the other Rincon companies. So when you actually look at the allegations in the indictment, it's very much overseas conduct. These are former and current Venezuelan officials who are engaged in the use of wires overseas with the goal of acquiring contracts from a Venezuelan state-owned oil company. Ms. Rao mentioned that there is a domestic arm of PDVSA, but that arm is not discussed in any of the allegations in any of the counts that relate to Ms. Rafoi. So that conduct, whatever it is, doesn't relate to the case against Ms. Rafoi. So in sum, when we look at what is the focus of the conspiracy statute, the conduct of the issue as to Ms. Rafoi and this alleged domestic, the focus is extraterritorial. And the Supreme Court tells us that if the conduct that's the focus of the statute is extraterritorial, then it's an impermissible extraterritorial application of the statute. And you don't even need to look at the FCPA. You can decide this case without looking at the FCPA. You don't need to decide whether she's an agent of domestic concern. You just apply RJR Nabisco, Step 1 and Step 2. At Step 1, is the statute expressly extraterritorial? No. At Step 2, is the conduct that's the focus of the conspiracy statute overseas or is it in the U.S.? The focus is clearly overseas. The fact that they can identify a single meeting in the U.S. is not sufficient because Morrison, Supreme Court case, tells us that the presumption against extraterritoriality would be a craven watchdog if it retreated back to its minimal allegations of domestic conduct. And Morrison's actually a really good example of that because in Morrison it involved a case for securities fraud and there were allegations that there had been material misrepresentations made in the U.S. So domestic conduct that would seem significant. And yet the Supreme Court said, no, the focus of the security statute is use of U.S. exchanges. It's U.S. security. So therefore, even though there's domestic conduct alleged, the conduct that's relevant to the focus of the statute was the use of foreign exchanges. And so therefore it wasn't a domestic application of the statute. And similarly here, this is not a domestic application of 371. But even if you do look to the FCPA, the FCPA's extraterritorial reach is not nearly as intense. There are particular provisions that address when a non-U.S. national can be sued under the FCPA and requires that they engage in conduct in the United States. There's a provision that addresses when a U.S. national who doesn't make use of the interstate commerce can be sued and it says they can be sued for conduct outside the United States that doesn't use interstate wires, but only if you're a U.S. national. So there's a nationality principle of jurisdiction. We can reach you if you're U.S. national. There's a territoriality principle. If you're foreign, we can reach you if you do it in the U.S. And then the domestic concern provision says if you're a domestic concern and you use interstate commerce, we can reach you here. So even if the conspiracy statute's extraterritorial reach is as extensive as the scope of that reach and it would not sweep in misrevoiced conduct. Even if you do decide you need to get to whether she's an agent of domestic concern and we maintain that you do not, we contend that the indictment entirely fails to adequately plead that she is, in fact, an agent of a domestic concern. So there are very few allegations related to any conduct that she took, but it all relates to her facilitating with a few individuals the opening of bank accounts at another banking institution. So she tells them, I opened the bank account or she receives an email, you know, about instructing the bank to wire funds. If that is sufficient to bring a foreign financial advisor or, you know, wealth manager or a banking institution within the scope of U.S. criminal jurisdiction, then everyone is potentially at risk. So the very minimal conduct in which she is engaged, I agree to help you open up an account at a Swiss banking institution. It happened to be a credit suisse. Suddenly that constitutes an agreement. She's in an agreement, so there's a conspiracy. And the fact that she said, I will help you open this bank account also makes her an agent. And if these terms are to be construed so broadly, then really any foreign financial advisor is at risk, and that simply is not what Congress would have intended, and that is extensive overreach of U.S. criminal jurisdiction to criminalize that sort of conduct. Let me also just spend a few moments on the money laundering count. We think that this is not at all clear-cut. In fact, the extraterritoriality provision of the money laundering statute, 1956F, requires that where you have a non-U.S. defendant, that the defendant engage in conduct that is not a non-U.S. defendant. The district court found that for Section 1956F to apply that the defendant must be physically present in the United States, do you agree with that proposition? We are not making that argument. I think there are cases that contradict that. That's not an argument we're making. We do maintain that where the government's theory, as it is here, is that Ms. Rafoi aided in abetting a money laundering violation, that the prohibited conduct, the aiding and abetting of the money laundering violation, needs to occur in part of the United States, and there's no allegation that she engaged in any conduct at the U.S. or, indeed, directed at the U.S. Again, we acknowledge that if someone's trying to use the mails to engage in computer hacking or wire fraud or, you know, purposely directing their conduct at U.S. residents, that's something entirely different. Here, she's operating in Switzerland in compliance with Swiss laws, helping non-U.S. nationals set up bank accounts. And even if one looks to the underlying financial transaction that she's alleged to have aided and abetted, the government does not sufficiently allege in the indictment that it occurred in part in the United States. The wire that is the subject of the count three money laundering charge is a $515,000 wire from Rincon Company 2 to Swiss Account 1. Rincon Company 2 is alleged to the indictment to be a Texas company, but also is defined to include its Venezuelan-based affiliate. And significantly elsewhere in the superseding indictment, when it talks about Rincon Company 2, it talks about it transferring funds from its U.S. account. That happens at paragraphs 104, 116, 117. So when they know that the government knows that Rincon Company 2 is using its U.S. account, the government knows how to allege that very specifically. But when it comes to this crucial wire transfer that's the subject of count three, the government does not allege that this Rincon Company 2 wire came from a U.S. account, so fails to satisfy the requirement in the extraterritoriality provision of the money laundering statute that the conduct occur in part in the U.S. Unless you have any other questions, I think I may be done. Thank you, Counsel. Sure. Rebuttal. Your Honors, I'll start with money laundering, since that's where the defendant ended. A lot of what the defendant is arguing are things that will be decided at trial. She's arguing that there aren't sufficient allegations, there's not a lot of U.S. conduct, but there is conduct alleged. There is U.S. conduct alleged, and an indictment is supposed to just be a plain, concise statement. It's not supposed to provide evidentiary detail. To the extent that this Court was worried that there's not sufficient U.S. connection for actual criminal conduct, it can decide that after trial. But right now, when this is done in a reasonable, common-sense manner, sufficient U.S. conduct is alleged. And if you look at the specific transaction in Count 3, the substantive money laundering charge, the beginning of that paragraph says this conduct occurred in the Southern District of Texas. That's one U.S. connection. It says that it was a transfer from U.S. from Rincon Company 2. Rincon Company 2 is defined as a business that's headquartered in Texas. It's also defined to include this Venezuelan affiliate, but that's really a very, to imagine that that's the only connection, that Venezuelan connection, that it's the only thing being alleged, is just looking at the indictment hyper-technically. Three other indictment paragraphs specifically allege that Rincon Company 2 has a Texas bank account. So if you put all that together, specifically the paragraph saying that this conduct happened in the Southern District of Texas, you know that the transfer originated from a U.S. bank account. And the government has proffered that that's true. So again, this is an issue that could be handled after trial, after full factual development. As far as some of the assertions that this was just a defendant doing normal Swiss transactions in compliance with Swiss law, Switzerland has laws against money laundering. This is just an assertion that it was in compliance with U.S. law. It also, Switzerland is also a signatory to the Convention Against Foreign Bribery. So to the extent that that was relevant, which we don't think it is, it could again be decided after trial, after we know the facts, if that's even relevant. But whether something is in compliance with foreign law does not actually determine whether it's in compliance with U.S. law. Now going back to the FCPA offenses, the defendant really relies on the fact that there was conduct overseas. There was conduct overseas. But it's not, there doesn't need to be a certain measure. It's not a balance that if there's five acts overseas and four acts in the United States, it's a domestic application and the United States can regulate it. And just on Step 1, we are not conceding that Step 1 is not met. Hoskins found that Step 1 is met for the agent theory, for example. So we are definitely arguing that. And we think the court can easily find that Step 1 was met. We are also arguing Step 1 is met for non-agent. But that is a harder question. We don't think the court needs to reach it. I see my time is up.